## JOHN D. PERRINE v. JAMES E. SERRELL.

1. Under a warranty that a horse is sound and kind, and that if he should not suit, the seller would take him back, and send the purchaser another, *held* that the warranty as to unsoundness was independent, and that the right to provide another horse under the contract did not extend to unsoundness; that the horse being unsound, and having died, the purchaser could recover damages, and was not obliged to call upon the seller to furnish another horse.

2. The measure of damages in such case is the difference between the horse, if sound, as he actually was. Expenses paid by the plaintiff in delivering the horse in New York to be allowed.

3. When the seller contracts to send a horse to the purchaser in New York, to be paid for when received in the city, the risk of the horse is upon the seller until the horse is delivered in New York.

4. When an exception is general as to the law upon a particular part of the judge's charge, and the assignment is also general, all the testimony necessary to support the legal proposition will be presumed to have been before the jury.

The case came up on a writ of error to the Monmouth Circuit Court.

The reason assigned for reversal of the judgment, and the facts relied on in support of them, are set forth in the opinion of the court.

For the plaintiff, *J. D. Bedle* and *M. Beasley*.

For the defendant, *A. C. McLean*.

OGDEN, J. The action below was for the recovery of damages for a breach of warranty contained in a contract for the sale of a horse.

A verdict was rendered in favor of the plaintiff below, and judgment entered thereon.

The first error assigned is, that the court refused to nonsuit the plaintiff below because, as alleged by the plaintiff in error, the sale was not absolute touching the warranty, but that Perrine had a right to furnish another horse in place of the one which was the subject of the sale. The whole contract was made in writing, by letters passing between them, the seller living in Freehold, the buyer living in New York. The plaintiff, after looking at the animal, called "the Bashaw colt," in Freehold, returned to the city, and on the 21st of January, 1861, wrote to Perrine as follows:

"The end of this week, or the beginning of next, if you will please write me word what day you will send the Bashaw

colt (price as spoken $200, and warrant it sound in all respects) up by the boat, I will be there with my horse which can return by the boat on the same day. I will also send you one hundred dollars on account, and you to allow me what is just for my horse; and if on trial the horse suits, I will pay the balance, or if not you are to get me such horse as will suit."

On the 23d of January, the defendant replied by letter, as follows:

" I received yours of the 21st, stating you would like me to send you the Bashaw colt. I will do so, and warrant him sound and kind. If he does not suit you, I will take him back and send you one that will. I will send him up on Saturday morning. Please have your horse to send back by my man. The price of this colt is $200. Send your check for $100,—your horse I will allow you all he is worth. When I see you all things I think will be satisfactory. I make it my business to make it so."

" P. S. The horse will come up with ' the Keyport ' from Keyport, N. J."

On the 26th January, Perrine sent the horse to New York in charge of one Shepherd, his employee, together with the following letter:

" We send to-day the black colt as agreed to—you will please enclose the money or check in an envelope, and remit it by the bearer, Edward Shepherd, and much oblige

Yours resp'ty,　　　JOHN D. PERRINE, by

D. M. Reed."

The horse was received by the plaintiff in New York, and he sent his own horse to the defendant by Shepherd, with the following letter:

" Jan'y 26, 1851.

Herewith I send you a certified check for $100, payable to your order, which can be drawn in any of your banks, on account of Bashaw colt, as agreed by letters which have passed between us." Then adding some characteristics of his own horse.

Perrine received the horse and check through his agent, Shepherd. It did not appear that any valuation was fixed by either party, then or at any other time, upon the plaintiff's horse, nor was there any testimony of his value offered at the trial. On the afternoon of the day on which the colt was sent to the city, he coughed considerably. He was well taken care of and nursed. He grew worse from day to day, and in a month afterwards died from inflammation of the trachea and lungs.

It was contended by Perrine in support of the first error assigned, that by the terms of the contract, the right to provide another horse extended to unsoundness; that it was a part of the warranty, and that the plaintiff could not recover damages until he proved that he had called upon Perrine to furnish another horse, and that Perrine had refused to do so.

This is not the true construction of the contract. The warranty, as to soundness, was complete and independent of the undertaking, that if the horse did not suit he might be returned, and another which would suit might be furnished in his place. The defendant below could not have warranted that the horse would suit. This was not a subject matter of warranty, because it might depend upon the taste of the plaintiff, as to gait, style, speed, &c. It did not refer to unexisting quality or condition of the animal. The plaintiff below could not have fulfilled the terms upon which he was entitled to call for another horse, because the colt died upon his hands from a disease, which the jury found existed when the contract of sale and purchase was made. If the horse had been sound, from aught that appears in this case, he might have suited the plaintiff in all respects contemplated in the condition.

Again, the plaintiff might immediately on delivery have resold the horse in good faith before the malady of which he died had developed itself, with his warranty of soundness, and have thus deprived himself of the ability to make return; but in such case, if he became liable for damages on his warranty, could it have been said that he could not have

fallen back upon the defendant because he did not first offer to return the horse? There is nothing in the terms of the contract which prevented the plaintiff from treating the warranty as extending only to soundness and kindness.

Another error assigned is, that the court erred in instructing the jury that the risk of the horse was upon Perrine until he was delivered in New York.

I think that the letters sustain the court in that position. The plaintiff was not to pay until the colt was received in the city. If a creditor of the plaintiff had attached the animal within the jurisdiction of this state, could the process have held him against the defendant as the owner? Or if the defendant had gone with the horse, to New York, and sold him to a third party there, could the plaintiff have maintained trover for him against the purchaser?

The trial by Serrell, which was to precede the purchase, was to be made in New York, and within a reasonable time; hence the title and ownership must have continued in the defendant until a fair opportunity was offered for making the trial. It appears, in the case, that the plaintiff, after receiving the horse, drove him several times without complaining of his qualities; and from the evidence, it is fair to assume that he would have been satisfied, if a serious unsoundness had not have been discovered. It is not the case of an absolute sale made at Keyport, with possession remaining in the seller merely as a lien, or to secure the payment of the purchase money.

Another error assigned is, that the judge instructed the jury, that their verdict could in no way depend upon the value of the plaintiff's horse.

How could the value of that horse enter into the question of damages? Serrell was to give $200 for the colt. He paid $100 in cash, in New York, and at the same time passed his own horse over to Perrine, at what he might be worth, on account of the balance. The defendant never informed the plaintiff of his estimate of the value of the horse sent to him. If he would not at the time fetch enough to make up

the full price of $200, Perrine had his action against Serrell for the balance. There was no error in this instruction of the court.

The defendant also excepted to the following part of the charge: "The measure of damages of the plaintiff, is the difference between the horse, if sound and as he was; and you shall also allow the plaintiff the expenses of doctoring the horse."

The rule, as to the measure of damages, was correctly stated, and has been well established. What other sensible rule could be adopted for the guidance of a jury?

Although the price was $200, yet if it satisfactorily appeared by the proofs, that had he have been sound he would have been worth $300, upon what principle should the plaintiff be deprived of the benefit of the increased value?

The last error relates to the charge respecting the expenses incurred by the plaintiff in doctoring the horse in New York.

The judge told the jury that such expenses should be allowed. The proof is, that Serrell paid twenty dollars to a veterinarian. It was not contended that the charge was unreasonable; why should it not have been allowed? It was a liability incurred by Serrell on account of the false warranty, and done for the benefit of the defendant. Serrell was bound to have the animal properly cared for, at the cost of the warrantor, until he should come and take him under his own charge.

The exception was general upon the law of that part of the charge, and the assignment of error is also general.

In such a case all the testimony necessary to support the legal proposition enunciated, is presumed to have been before the jury. If the defendant intended to object to the charge because the evidence of notice was not sufficient, he should have stated his point distinctly to the judge, and have called upon him so to instruct the jury. The attention of the judge would then have been directed to the point; and if the case had required it, he might have qualified the charge in that particular. As the bill stands, we must take the exceptions

Aycrigg's Ex'rs v. New York and Erie Railroad.

to have been to the right of the plaintiff to such an allowance by a jury under any circumstances.

It is necessary for the protection of a judge, in the haste of a trial at circuit, that a general exception of this character should be taken most strongly against the plaintiff in error, that all necessary presumptions and intendments should be made in support of a judgment.   In 3 *Green* 276,* the court said : "If a party wishes to have the opinion of the court upon the legality of a charge, he should put his finger on the matter objected to, and state the reasons."

It does not appear that the attention of the judge was called to the reason, urged in the argument before this court, why his charge is alleged to be erroneous; so that if in error, he might have corrected it, and have obviated the objection.

A party should not be permitted to surprise his adversary, nor be allowed here, for the first time, to raise a point which might have been corrected if distinctly made in the court below.   As said by the Court of Errors and Appeals, in the case of *Oliver* v. *Phelps*,† " without such restraint, bills of exceptions would be but traps to surprise and mislead an adversary, and not a means for the attainment of justice."

The judgment below should be affirmed.

Judgment affirmed.

VREEDENBURGH, J., concurred.

CITED in *D., L. & W. R. R. Co.* v. *Dailey,* 8 *Vroom* 528.

---

* *Ludlam* v. *Broderick.*   † *Spencer* 180.